JOE SWEET v. THE STATE.

No. 8170.   Decided May 21, 1924.

Rehearing denied June 27, 1924.

1.—Manslaughter—Declarations and Acts of Co-Conspirator—Principal.

Upon trial of murder and a conviction of manslaughter, there was no error to admit testimony of the State's witnesses that about ten minutes after deceased and one Bryant left, the latter and appellant came back and the latter said that he had just killed deceased, and offered to show the witnesses the scene of the homicide, and that the witness Bryant stated that he was proud of the killing, etc., and that the whole damned side of deceased's face was shot off.  This testimony was both res gestae and the declarations of a co-conspirator, and admissible in evidence, under the facts of the instant case.

2.—Same—Conspiracy—Rule Stated—Evidence.

Where two or more are charged with the commission of crime, if the parties can be identified at the time and place of the crime as joint participants in its commission, this testimony is admissible, and there was no error in proving that the co-conspirator Bryant held his gun on the deceased during the fatal difficulty without first showing the conspiracy between him and defendant.  Following:  Cox v. State, 8 Texas Crim. App., 254.

3.—Same—Rehearing—Conspiracy—Evidence.

Where, upon appeal from a conviction of manslaughter, the record showed that the witness Bryant and appellant acted as co-conspirators and principals, all the statements made by said Bryant being in the presence of appellant who with him was escorting the witness who testified to the statements of Bryant to the scene of the homicide where deceased was found but not yet dead, the same were admissible, and there is no reversible error.

Appeal from the District Court of Wheeler. Tried below before the Honorable W. R. Ewing.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*R. H. Templeton* and *C. C. Small*, for appellant.—Upon question of declarations of co-conspirators: Cortez v. State, 6 S. W. Rep., 546; Holland v. State, 45 id., 727; Ripley v. State, 100 id., 944; Wallace v. State, 145 id., 925; Gibbs v. State, 156 id., 687; James v. State, 228 id., 941.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Wheeler County of manslaughter, and his punishment fixed at three years in the penitentiary.

That appellant shot and killed deceased on the occasion in question, was not denied. The defensive theories were that upon learning of insulting conduct by deceased toward the little daughter of appellant the latter armed with a shotgun went to where deceased was and attempted to arrest him for said conduct, whereupon deceased made a movement toward his pocket and appellant shot him, asserting self-defense. The wound was the result of shots from both barrels of a shotgun and took effect in the head and face of deceased.

Deceased was working with W. G. and Cordie Jones the day of the homicide at his home. One Bryant came horseback to where they were, carrying a shotgun, and stated to deceased that some cows of his were in Bryant's field and he wanted him to get them out. Deceased and Bryant had some further conversation and the latter said: "If you are going to do anything with them, let's go," whereupon deceased got on a horse and left with Bryant who had his gun on the front of his saddle. This was Saturday afternoon. That morning Bryant was at John Garner's place when deceased passed and in a few minutes unhooked his horses from a wagon and got on one of them and rode off, no explanation being given of his conduct. Bryant did not testify as a witness in this case.

From the testimony of the two Jones we learn that about ten minutes after deceased and Bryant left, the latter and appellant came back on horseback and appellant said that he had just killed deceased. He offered to take witnesses down and show them. They went at once to the scene of the homicide and one of them said that he doubted if it was thirty minutes after the shooting until they got down to where deceased lay. Appellant and Bryant rode and the others walked. On the way there Bryant stated that he was proud of it, glad deceased was killed, that he, Bryant, had daughters and was afraid for a man like deceased to be loose in the community. When they got to deceased, Bryant looked at him and said: ''The whole damn side of his face is shot off.'' He and appellant then rode away.

When the State closed its case appellant made a motion to exclude all the testimony of acts, declarations and conduct of Bryant, and especially the testimony of the two Joneses as to that part of Bryant's conversation and conduct that occurred after the shooting. This motion was overruled, but in his charge the learned trial judge saw fit to tell the jury not to consider the acts, and declarations of Bryant as testified to by the Joneses. Appellant's first bill of exceptions complains of the refusal of said motion.

Relative to the acts, words and conduct of Bryant before the shooting, we observe that it was the State's theory that Bryant was a principal offender with appellant. As supporting this contention, in addition to the fact that Bryant came with a gun to where deceased was and induced him to go with him to where they met appellant, the State put on the stand an eyewitness to the shooting who testified that he met appellant on that day and was induced by appellant to accompany him; that they went by the home of a Mr. Marr where appellant procured a shotgun and then by the home of Bryant and from there in the direction of the home of deceased till they met deceased and Bryant. When they met them appellant told deceased to stick up his hands and both appellant and Bryant got off their horses. Witness testified that appellant had his gun leveled at deceased and that Bryant also held his gun on deceased and was standing close by appellant. He also stated that Bryant was holding the horse of deceased and that after deceased was shot Bryant and appellant rode away together. This witness said it was about four hundred yards from the scene of the shooting to the home of deceased.

Article 74 of our Penal Code makes all persons who act together in the commission of a crime, principal offenders. Becoming more specific Article 75 P. C. proceeds to say that when a person commits a crime and another is present and knowing the unlawful intent, aids by acts, or encourages by words or gestures, the principal actor, such other person becomes a principal in the crime, and we see no escape from the conclusion that the acts and conduct of Bryant as

detailed by witness Childress to support the proposition that he was a principal. We gather from the testimony of this witness that when appellant told deceased to put up his hands the latter wanted to know what for or something to that effect and appellant told him for insulting his girl, and then fired both barrels of a shotgun into the head of deceased. Bryant not only then held his gun on deceased and held his horse but went back with appellant to where the Joneses were and to them expressed his entire approval of what appellant had done and disclosed his knowledge of the motive and reason for which it was claimed to have been done, and further then rides with appellant from place to place for some time after the homicide, as appears from the testimony of appellant himself. No other explanation or inference can arise from Bryant's conduct, as it appear to us, save that he was a principal. We think there was no error in admitting evidence of what he did and said prior to the killing, upon the theory that he was a principal offender.

As to what was said and done by Bryant afterward, we observe there was nothing in his statements which contradicted appellant's claim of self-defense, or tended to lessen the likelihood that the jury would believe his story relative thereto. If we are permitted to interpret the effect of such testimony upon the jury, it would seem to support and strengthen the theory of the defense based upon the issue of manslaughter, for one whose female relative had not been insulted, but who was evidently familiar with antecedent facts, to place before the jury the fact that he was proud of what had been done, had daughters himself, and that the community was well rid of such a man as deceased. Passing that aspect of the matter however, we believe the acts and conduct of Bryant to be res gestae. Within ten minutes after Bryant and deceased left the home of the latter, Bryant and appellant are back and appellant, according to both the Joneses declared that he had killed deceased,—"that he was the son-of-a-bitch that done the work" and the four proceeded at once to the scene of the homicide. The acts, words and conduct of Bryant occurred in the presence of appellant as they go back and at once upon their arrival at the scene.

Res gestae statements of the principal actor in a homicide are no more admissible than are statements of one who is a principal in the offense but is not the chief actor in the deed. Mr. Branch cites many authorities in Sec. 83 of his Annotated P. C. supporting the proposition that whatever is said by any party to a transaction declared on in the indictment at the time of the transaction, is a part of the transaction itself and a part of the res gestae.

But appellant presents objection to the State proving that Bryant held his gun on deceased during the fatal difficulty, on the theory that no conspiracy between appellant and Bryant had been shown and that Bryant's act was but the voluntary act of a third party. In

Cox v. State, 8 Texas Crim. App., 254, a case that is regarded as leading and that has often been cited, Judge White says:

"To our minds, a great deal of the trouble, confusion, and discussion with regard to conspiracy, where two or more are charged with the commission of crime, might and can be obviated by keeping in mind these statutory provisions. If the parties can be identified at the time and place as joint participants in the commission of the crime, why the necessity of going behind that fact to establish a conspiracy to do the act already accomplished, and for which the law denounces them as principal offenders and liable to punishment as such? Why want a better predicate or any further evidence even of a conspiracy, if their presence and guilty participation is already established?"

We are of opinion that the testimony objected to in each of the bills of exception presented by appellant was admissible for one or the other of the reasons stated. We have carefully examined the able brief and argument presented by appellant and would be in accord with his contention that the withdrawal in the charge of certain testimony would be ineffectual to remove the injury of the admission of such testimony, if we could agree with appellant in his major premise that the testimony was inadmissible but we can not.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 27, 1924.

LATTIMORE, Judge.—In an able and persuasive motion for rehearing appellant urges and argues generally the inadmissibility of the testimony of the witness Bryant. We devoted much time to the consideration of the testimony of this witness originally and have not been led to conclude that our decision in regard to same was erroneous. The quotation made by us from the case of Cox v. State, supra, seems entirely applicable, and it being shown practically without controversy that Bryant was acting with appellant in the commission of the offense, as stated by the court in said opinion, there seems little necessity for discussion of the question of whether there was a conspiracy shown between Bryant and appellant. In addition to his presence and cooperation with appellant at the time of the homicide, it further appears that said Bryant went with appellant from the scene of the homicide back to where the Jones witnesses were and from the point with all the party back again to the scene of the homicide, and from that point again accompanied appellant when he went away from said place. The inference and conclusion seem so strong to us,—from all the facts in evidence, that Bryant went to the place where deceased was working and made statements to him not in any-

wise shown to be true and thereby induced deceased to accompany him directly to the place where in a few minutes they met appellant, who acted with Bryant in the swiftly moving events,—as to almost entirely negative the possibility that there was no prior agreement between Bryant and appellant in the premises. All the statements made by Bryant were in the presence of appellant, who with Bryant was escorting the witnesses who testified to the statements of the latter, to the scene of the homicide where deceased was found but not yet dead.

We think it not necessary to further elaborate the discussion. The authorities cited by appellant in his motion for rehearing do not seem to us to shed any new or different light upon the law relative to said testimony, from that had before us in the original consideration of the matter.

The motion for rehearing will be overruled.

                                                     *Overruled.*